FILED
January 21, 2025
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: _____CAV_____
DEPUTY

**United States District Court Western District of Texas Waco Division**

**John Doe,
Plaintiff,**

**v.**

**Mission Waco, Mission World, et al.,
Defendants.**

**Case No. 6:24-cv-00600-ADA-JCM**

---

# COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

**The honorable Judge Presiding**

**1. Introduction**

1.1 Plaintiff, John Doe, brings this action against Mission Waco, Mission World et Al. and for violations of federal and state civil rights laws, including Title III of the Americans with Disabilities Act (ADA), Title VII of the Civil Rights Act of 1964, and the Texas Commission on Human Rights Act (TCHRA), The Federal Rehabilitation Act of 1973, Civil Rights Act of 1968, covering fair housing, The Fair Housing Amendments Act of 1988, Health Insurance Portability and Accountability Act (HIPAA) 1996, HIPAA Privacy Rule of 2000  This action seeks injunctive relief, compensatory damages, and other relief arising from discriminatory actions and adverse treatment directed toward Plaintiff.

---

**2. Jurisdiction and Venue**

2.1 This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 42 U.S.C. § 12188(a) (ADA enforcement provision).

2.2 Supplemental jurisdiction over related state law claims is conferred by 28 U.S.C. § 1367.

2.3 Venue is proper in the Western District of Texas under 28 U.S.C. § 1391(b) as the events giving rise to this claim occurred within this district.

---

**3. Parties** 3.1 Plaintiff is an individual residing in Waco, Texas, and is regarded as having a medical disability under perception. Plaintiff is a founder of a Religious organization in Waco. Plaintiff is holds a deep association with Judaism

3.2 Defendant, Mission Waco Mission World et al, is a registered non-profit corporation registered to do business in Texas and operating at 1315 N. 15th St Waco, Texas 76707.

## 4. Factual Allegations

Mr. Doe is a long term resident of Waco, and Waco Native. He lives in another part of the city. Mr. Doe purchased property in 2014 in proximity of Mission Waco with intent to turn the property into a public gathering space encouraging a natural environment, and garden space.

Mr. Doe worked on the property space intermittently for 10 years with intent to turn the property into a non-profit charity. Mr. Doe achieved the goal of becoming a Texas domestic nonprofit in 2023 the property is considered a farm. It has a USDA farm number, and a Farm, and Timber license issued by the State of Texas. Mr. Doe has conducted business using the organizational name.

It is considered a religious space, and is mentioned as a devotional area in its focus activity as well as conservation, and devotion as registered with the State of Texas. Mr. Doe is an avid gardener, an educator and practices a devotion encouraging spiritual practice in all forms of activity.

Mr. Doe met Mission Waco Staff beginning in 2014 Including Jimmy Dorrell the director at the time, the volunteer coordinator, Dennis, whom Mr. Doe recalls with great respect, who sent volunteer staff on his land for neighborhood improvement. Mr. Doe along with the volunteer are featured on the news. Mr. Doe is interviewed as a desire to help the community by putting the property in-service for the community. He shopped in the grocery store, a full service store. The store is not federally subsidized, nor is it a food pantry, nor is the food discounted, nor does the store target specific groups. The store is open to all members of the public.

Mr. Doe is known to members of the store from 2014 to present. Mr. Doe traveling from his residence, and working on the property frequently used Mission Waco services offered to the public especially when purchasing food, and other items from the store for nourishment when working on his charity non-profit.

Mr. Doe regularly ate in the World Cup Cafe'. He did so on the days he was not at work, and at other times as it is located close to his property. He began eating in the Cafe' when Brooke, a Mission Waco Employee, was the manager. Brooke moved on to become a paralegal. This is so done with cordiality, behavioral neutrality, and affection without incident until as best date of approximation beginning the 3rd week of June 2024 when the several employees of the World Cup Cafe' and Urban reap, including volunteers began making disparaging remarks followed by actions of increased monitoring, doubt, and hyper-scrutiny a Lessing of affection, and actions that were unwelcoming in that they were disparaging, non-affirming, delegitimizing. The comments communicated. In such a way as to raise doubt in another individual (Mr. Doe) were made by the Staff targeting Mr. Doe. These gestures and actions were not made on one or two occasions nor were they made in passing. They became ingrained in the staff, targeting Mr. Doe decreasing his enjoyment of the facility, and affecting his level of service inside of the cafe'.

Mr. Doe became hostage to these solidified actions which increased when Mr. Doe inquired further or made statements asking for the behaviors to stop, or reaching out for assistance from the front office.

The front office with Kathy Wise appeared to join in the DE legitimization process by creating a false counterclaim one that almost identically mirrors a claim Mr. Doe made a complaint against a staff member involving this matter. Mr. Doe was encouraged by the front office to "work it out" with the world Cafe' staff by Kathy Wise.

Mr. Doe was encouraged to be in contact with Mrs. Wise on the matter. He sent emails as a daily report to Mrs. Wise on the Cafe' activity in hopes of working through the situation for resolution. These emails were made specifically in the 3rd week of September. It appears based on Mrs. Wise's response she did not like the content of the emails as it made specific references to troubling behavior of the staff. Plaintiff expected some sort of response to the emails. However Kathy did not respond. Plaintiff continued to report as he was encouraged. He did not get any reply from Kathy as conditions worsened.

In relation to the email. Plaintiff would like to point out preference or likes, and dislikes of a supervisor are not covered activity under the law in such a claim. A Civil Rights Claim is not chilled, or delegitimize because one may not like the subject matter. At this time. It is believed Mrs. Wise along with other staff members became prejudiced against Mr. Doe in relation to the subject matter.

Mr. Doe found his options of receiving assistance on the matter from the company narrowed. His movements inside of the cafe were restricted by order of Kathy Wise. Each individual he would normally access for assistance on any matter great, and small by the company became unhelpful, hostile, and unwelcoming at each instance incrementally narrowing the field of staff interacting with Mr. Doe. Mr. Doe could not make further complaints or assert his rights inside of the Cafe' as was normal behavior before the incident over matters large, and small. Mr. Doe was redirected toward the office through the staff's inability to engage Mr. Do according to standard service.

Movements, showing the appearance of communication changes appearing to target Mr. Doe due to the timing, and direct communications by Mrs. Kathy Wise toward Mr. Doe inside of the office were further restricted when the contact system of Mission Waco was changed to allow an individual only to contact Mission Waco through the email portal labeled personnel, or through the inquiry portal. Previously any member of the public could directly email key staff through the website.

It is believed this change is made because of Mr. Doe taking advantage of this open company policy by complaining about a Civil Rights Matter. It is believed this change is specifically made to target Mr. Doe as it is referenced in a meeting Mrs. Wise, and Mr. Doe conducted with each other.

In this manner. The field of workers are continuing to attack Mr. Doe. Mr. . . . . . Doe is left with one email portal to contact the staff on any matter. All concerns including third party concerns were then made back to this one email portal. Changing the way Mr. Doe could regularly work out any situation of any matter large, and small with staff members. These efforts were systematic, and retaliatory in nature. It is believed they are at the direction of senior staff members. It may have been encouraged by advisories to the senior staff to conduct themselves in such a way toward Mr. Doe.

Mr. Doe at each instance of communication made a civil rights statement, or a statement on the ongoing matter. All statements of such are not heard. They go unanswered which is a departure from normalized engagement. It creates a sense of panic inside of Mr. Doe as he accesses services in Mission Waco while facing increasing attack by employees with no relief given in contrast to repeated requests by Mr. Doe.

The level of hostility increases so much inside of the Cafe Mr. Doe is called a "snitch" by staff, yelled at by Mike Charette on several occasions, and chased through the Jubilee Grocery store after a chance encounter with Mr. Charrette at the Grocery Store. Mr. Doe communicated to Mr. Charrette. He filed a lawsuit. This, spoken communication, done in a non-hostile manner toward Mr. Charrette is considered a protected activity free of retaliation.

Mr. Charette becomes enraged, screaming at Mr. Dow, and chasing him through the store where Mr. Doe is paying for items. Mr. Doe is demanded to repeat the words in front of the Cashier Nichole. He did not for two reasons, fear of retaliation, and spreading the information to an unintended party, and

Mike Charette reminded Mr. Doe of his patients in the hospital who are on meth and showing rage. This kind of rage is so distinct it is burned in the plaintiffs mind. Mr. Doe did not feel safe. Mr. Doe paid, and got out of the store.

Mr. Charette retaliates targeting Mr. Doe on this matter. On the following Saturday by calling the police after Mr. Doe enters the World Cafe for oatmeal, and an egg. Mr. Doe spoke to Officer Taylor on the matter outside of the Cafe'. Officer Taylor said, "He wanted you out because you filed a lawsuit". He further elaborated by saying, "Never in my 21 years of service have I had a call like this. Never in my 21 years of service have I ever removed anyone from this restaurant. On appearance Mr. Charette appeared to wait for the right time for Mr. Doe to enter the store for breakfast as is done by Mr. Doe's routine. Mr. Charette created a situation where he used the police to retaliate against Mr. Doe as he engaged in the peaceful enjoyment of the facility as he waited for his food. Mr. Charette did not remove Mr. Doe for any reason. Mr. Charette removed Mr. Doe because he filed a lawsuit which is a protected activity under the law, and it is a protected activity to communicate such a matter. .

Consequently to further illustrate the changes in staff perception toward Mr. Doe. For 10 years. Mr. Doe walked, and drove his vehicles from his property to his storage unit without incident. This is known to staff. However, Mr. Doe is then accused of loitering when walking past the property by a staff member on his way to the storage unit. This is a blatant attempt to push Mr. Doe into a criminal activity. These nudges were enacted several times by the staff members to threaten to call the police after Mr. Does Inquired about his bill for an item he did not order, was not served by staff and an item that is not found on the menu. This item is not charged to other customers.

Furthermore it is believed the item is changed on the menu after Mr. Doe makes a consumer report complaint on the menu. The item, now on the menu, targets non-coffee drinkers. Mr. Doe drinks tea. The item targets those who are requesting a coffee mate packet for drinks only. Mr. Doe ordered the item for his oatmeal. Further, the day before Mike Charette targeted Mr. Doe for the same item overhearing Mike tell Tina to charge him for the item. Tina refused. This is indicative of a pattern of behavior. That is based on hostile actions. The item updates are also reflected on the online menu. Which remained unchanged for years reflecting outdated prices until Mr. Doe made a consumer complaint to the business bureau. After the complaint is made both the in-house menu, and the online menu change.

The actions correspond with a letter plaintiff sent to Mr. Charrettes email where he is asked to cease, and desist his behaviors targeting Mr. Doe, along with a non-disclosure agreement. This letter is shared with other individuals in the restaurant at the time by Mr. Charette.

Mr. Doe is of both Ashkenazi, and of Sephardic Jewish descent. Mr. Doe can be identified as non-white Hispanic. He was the target of two separate anti-Semitic attacks this year in correspondence with the increasing anti-Semitic incidents documented in the country.

Mr. Doe is the founder of a Texas recognized domestic non-profit charity. He is disparaged along those lines by staff members in conversation in a clustered form or discrimination combining perceived disability, and religion to create an oppositional narrative in contrast to what Mr. Doe believes about himself. These projects seriously became a challenge slowly, incrementally decreasing his access to resources available moving him to social, and material impoverishment.

Mr. Doe by a tightening structure by the company is not allowed to speak back to his attackers in a manner to neutralize the behaviors toward him without substantial retaliation. The conditions are created in a manner where he can no longer make further statements of his treatment inside of the Cafe'  This is done so through structural restraints targeting Mr. Doe  in the matter.

The withdrawal of communication allowed a diversity of thought to arise, then action at the direction of the company allowing a consensus reality to form within the company creating an 'us them' or in-group outgroup situation. Mr. Doe did not once ever advocate for such a structure to arise targeting him nor was it wanted. Mr. Doe wanted resolution, answers into the nature of the matter by staff members, in order to fully understand the motivations behind the changes, and for the targeting to stop. Mr. Doe is sickened by the level this reached. Mr. Doe claims the level is reached because of bias formed related to the protected activities. This may have entirely been avoided if it had not been for the directional strengths of the company projecting adverse conditions on to him.

Mr. Doe noticed the Baylor Student fell under the influence of those in the Cafe,' The Baylor student began acting in a disparaging manner consistent with the regular World Cup Cafe' Staff. This is reflected in a condescending behavior that was once warm, and devoid of insincerity.

Legal references related to the matter brought before the court:

School Board of Nassau County v. Arline (1987):

> Perceptions of medical conditions (e.g., contagious diseases) cannot justify exclusion without evidence of actual risk.
>
> Under 504 it violated the direct threat standard of this ruling in that Mr. Doe's perceived issues constituted no changes from the staff, nor are they as such to warrant any difference of treatment based on these issues.

The World Cup Cafe' employees Baylor Students under the Work Study Program. Mr. Doe received comments, and treatment by a Mission Waco Waitress who was influenced by the subject matter, related to this case, directed adversely toward Mr. Doe.

Mr. Doe was treated substantially differently because of this perceived impairment. His conversations with individuals inside of the Cafe' were then made in a manner such they appeared intended for a communication between big bird and cookie monster.

Mr. Doe has an IQ of 140. He is considered to have an exceptional trait in verbal reasoning. This trait is also recognized as a genetic marker of Ashkenazi Jews

Mr. Doe noticed substantial instances of retaliation after making a statement of, either verbally or in writing of the "J" word as in "Jewish" to staff, of making a statement on anti-Semitism. Which is well protected for Mr. Doe to make under Civil Rights Law as it is considered a protected activity.

After each reference he noticed more restrictions by the staff targeting Mr. Doe. This is in direct reference to stop acting against specific nations, nationalities, and groups associated with Judaism. This is in violation of title II public accommodations in civil rights.

42 U.S.C. § 12102(1) (C) Regarded as. Mr. Doe never disclosed medical information to anyone in the restaurant. Nor is this matter discussed, nor is it a thought until July 2024. It is believed through Mike Katz this "regarded as category" is triggered through communication by Mr. Katz to the staff.

It is also believed this is fueled by online content, personal text messages, and a shutting off of communication toward Mr. Doe by staff members. He references some of the areas in the affidavit.

And 42 U.S.C. § 12102(3) providing further explanation.

This is further covered in

## ADA Amendments Act of 2008 (ADAAA)

- Public Law No. 110-325

    Eliminated the requirement that an impairment must substantially limit a major life activity to qualify under the "regarded as" prong.

    Focus shifted to how an individual is treated based on a perceived impairment, rather than the actual limitations caused by the impairment.

The World Cup Cafe' employees Baylor Students under the Work Study Program. Mr. Doe received comments, and treatment by a Mission Waco Waitress who was influenced by the Subject Matter directed adversely toward Mr. Doe.

Mr. Doe was treated substantially differently because of this perceived impairment. His conversations with individuals inside of the Cafe' were then made in a manner such they appeared intended for a communication between big bird and cookie monster.

Mr. Doe has an IQ of 140. He is considered to have an exceptional trait in verbal reasoning. This trait is also recognized as a genetic marker of Ashkenazi Jews

Because of thinking allowed to solidify in the staff based on availability heuristics, and confirmation bias in a manner allowed to escalate amongst the staff it is believed the staff believed Mr. Doe somehow posed a direct threat to everything in Mission Waco, every brick, every building including the street.

Mr. Doe in contrast to a year, and a half ago noticed a serious drop in employment opportunities. He was employed briefly in October in a profession in keeping with his field. It is believed Mr. Doe lost the job because of online content Mr. Doe associates as originating, and fueled by Mission Waco Staff.

Mr. Doe has filed an inquiry with the EEOC. However it is noted that this falls under ADA, and other laws as there appears to be a sharp decrease in perception of Mr. Doe's abilities.

Section 42.07 – Harassment Texas Administrative Code

Deliberate and repeated actions designed to harm or intimidate an individual could constitute harassment if they cause emotional distress or alarm. The actions which did not show relief, and continued show areas of harassment under Texas Administrative Code.

Rizzo v. Children's World Learning Centers, Inc., 84 F.3d 758 (5th Cir. 1996): TITLE III ADA

   Key Issue: Behavior change after learning of an employee's medical condition.

> Relevance: The case highlighted the unlawful termination of an employee based on a perceived disabilities
>
> Principle: Businesses cannot change their treatment of employees or patrons negatively upon learning of a disability. This law extends to individuals in the public space in non-employment areas such as a restaurant patron.
>
> This case clarified the direct threat defense under the ADA.
>
> Key Holding: Employers can exclude individuals if their employment would pose a risk to their own health or safety, but only if supported by clear, individualized medical evidence.
>
> Significance: Perceptions or assumptions about an individual's health condition do not justify exclusion or disparate treatment.

## Section 504 of the Rehabilitation Act (1973) -further clarification.

This federal law predates the ADA and prohibits disability discrimination in programs or activities that receive federal funding. Its standards for discrimination claims align closely with those of the ADA.

Direct Threat Defense:

- Employers or service providers can only exclude individuals if they pose a direct threat, defined as a significant risk to health or safety that cannot be mitigated by reasonable accommodations.
- This determination must be based on individualized assessment using objective evidence, not stereotypes or assumptions.
(*School Board of Nassau County v. Arline*, 480 U.S. 273, 1987).

Americans with Disabilities Act (ADA) (Title III):

- Public accommodations cannot discriminate against individuals based on actual or perceived disabilities.
- Confidentiality Violations: Sharing unverified or sensitive information about someone's medical condition without consent violates ADA privacy provisions. For example, disclosing perceived medical conditions that lead to different treatment can create a disparate impact.

Section 42.07 – Harassment:

- Deliberate and repeated actions designed to harm or intimidate an individual could constitute harassment if they cause emotional distress or alarm.

Because of the nature of the matter Plaintiff believes his Medical Privacy may have been compromised. He filed an inquiry with the office of Civil Rights for HIPAA violations.

Plaintiff also made a public complaint with the Better Business Bureau, and has made several statements with the police who are assisting in the collection of evidence to investigate crimes of hate targeting Mr. Doe.

This includes evidence of online material fueling hateful responses targeting Mr. Doe on his religious charity, and other protected characteristics such as religion, perceived disability, ethnicity, and other content.

Plaintiff suffered emotional distress because he suffered challenges to assumptions he had himself including his religious beliefs, his long term work in the neighborhood, and disparagement regarding his religious practices related to the work. Including repeated comments designed to injure, inflict pain.

1. Americans with Disabilities Act (ADA) (42 U.S.C. § 12102)
Legal Basis: The ADA prohibits discrimination based on actual or perceived disabilities, including retaliation against individuals engaged in protected activities or subjected to harassment due to perceived impairments.
Matter: Mr. Doe did not disclose any medical information to individuals at the World Cup Café. However, in July 2024, it is believed that communication from Mike Katz triggered the "regarded as" category, resulting in hostile behavior from staff. Online content and personal text messages further escalated this hostility. It is of note Mr. Doe did not disclose any medical information to anyone.

2. ADA Amendments Act of 2008 (ADAAA)
Legal Basis: The ADAAA expanded protections for individuals "regarded as" having disabilities, eliminating the requirement for substantial limitations.
Matter: Mr. Doe was treated differently based on perceived impairments. Staff interactions devolved to condescending tones, akin to conversations with fictional characters. Despite having an IQ of 140 and recognized as exceptional in the verbal reasoning category. This verbal reasoning trait is found disproportionality in Ashkenazi Jews. It is considered an identifier of having Ashkenazi Jewish identity.

3. Civil Rights Act (Title II - Public Accommodations)
Legal Basis: Title II prohibits discrimination in public accommodations based on race, religion, or national origins
Matter: Several direct, and indirect comments directed toward Mr. Doe on his property, a religious organization, and Mr. Does religious beliefs by Mission Waco Staff, and other patron in the restaurant After makings I statements referencing anti-Semitism and his Jewish heritage, Mr. Doe experienced targeted restrictions and exclusionary treatment by staff, which intensified following these disclosures. This constitutes unlawful retaliation for exercising protected rights.

4. Rehabilitation Act of 1973 (Section 504) referring to the above referenced 504 matter.
Legal Basis: Section 504 prohibits discrimination based on disability in federally funded programs.
Matter: The World Cup Café employs students through Baylor University's federally funded work-study program. A Mission Waco waitress influenced by adverse communications targeted Mr. Doe, contributing to a hostile environment in violation of Section 504.

5. Section 42.07 – Harassment (Texas Civil Code)
Legal Basis: Harassment includes deliberate, repeated actions causing emotional distress or alarm.
Matter: Mr. Doe, a member of multiple protected classes, experienced targeted harassment, emotional distress, and diminished ability to advocate for himself. Actions included spreading online content and internal discussions among staff that fostered a hostile environment, adversely affecting Mr. Doe's reputation and well-being.

6. Retaliation for Protected Activity
Legal Basis: Retaliation against individuals for filing civil rights complaints or lawsuits is unlawful under federal law.
Matter: Mr. Doe was removed from the World Cup Café by police at the request of staff, as confirmed by Officer Taylor, who stated, "They wanted you out because you filed a lawsuit against them." Dispatch notes obtained under FOIA confirm this.

7. Confidentiality Violations under ADA Privacy Provisions
Legal Basis: Sharing sensitive information about perceived medical conditions without consent constitutes a violation of privacy under the ADA.
Matter: Mr. Doe believes his medical privacy was compromised through unverified disclosures leading to disparate treatment. He has filed an inquiry with the Office of Civil Rights for potential HIPAA violations.

8. Online Harassment and Religious Disparagement
Legal Basis: The ADA and Civil Rights Act protect against targeted harassment based on religion or other protected characteristics.
Matter: Online content, believed to be originating from Mission Waco staff as is referenced in the affidavit has fueled hateful responses targeting Mr. Doe's religious charity and practices. Comments designed to disparage his religion and ethnicity, behaviorally paired with the perceived medical issue caused significant emotional distress and harm to his long-term work in the community.

Mr. Doe was subject to none of these things nor did he think of himself in this regard as to what is projected onto him by Mission Waco Staff, and others influenced by the online content, or by communication of Mission Waco staff to members of the public that are not directly related to the matter. Mr. Doe now frequently has to write cease, and desist letters, and other letters in businesses over the matter. Again this is not an issue at all. Nor did he receive any treatment to such until about a year, and a half ago.

**A Note to the court of Online behavior:**

Working in the behavioral field, Mr. Doe is aware of the effects of online content on the individual while any individual interacts with material online. This online interaction creates an illusion of secrecy, and privacy, influencing the behavior of the viewer created in the online world. It has a 'secret club effect' when viewing online information. The online world has forever qualities associated with interaction. The forever qualities are unlike information once accessible to newspapers, and magazines where information is discarded, or in an analogy related to how the human memory works is forgotten. It is forgotten because it is buried, and covered up by new content. This is how human memory works. In so much the human memory is so present minded it need not be bothered by old repetitive information that if self-produced, causes psychological scars. Those individuals become the plaintiff's clients. This can be unlearned in even the most severe of patients.

If this is an external reminder from the environment such as online content, harassment because of online content, or a negative projection targeting the individual it is oppression. It is harassment because the actions are unwanted. If it falls under certain categories such as targeting an individual with medical information. It is social imprisonment. If targeting an individual with this matter. It destroys the liberties we are to have in our freedom. We are to be free of such occurrences in public space. By law.

Viewing information is no longer a collective experience often isolated to groups in texting rings, or viewing online content; there is a "last to know" effect in the individuals viewing the content. Online behavior is not related to online activity. It wires online in a heightened sense, because only a few senses are engaged related to the content, mostly eyes, and ears. From there the heightened effect of online material continues in that manner when offline. These dangerous components fueled the behavior toward Mr. Doe created several situations in Waco. This is not excusive of the unlawful behaviors of the defendant. The material creates a means to justify the behavior targeting the plaintiff. It is an agent.

The behaviors targeting him at the World Cup Cafe are suggestive of online content as a component of the unlawful behaviors targeting him.

**In relation to the repeated behaviors directed toward Mr. Doe, and its impact.**

Mr. Doe is a minority. In several protected categories. The impact toward minorities. Is deeply felt, and often mercilessly blotted out by the whims of the majority. Mr. Doe was continually harassed by his protected characteristics by the defendant, decreasing his visibility, and way of life. These extra challenges unduly burdening Mr. Doe are unlawful that are unlawful The burdens decreased Mr. Does ability to effectively advocate for himself to resolve all matters before reaching to the courts for assistance. It is the most destabilizing feeling when you are in a room full of people who are active opposing your way of life. It's felt inside of the body that is difficult to describe, but can be articulated. It hurts at the level it destroys the foundational structures you believe about yourself, and those who made sacrifices for you. They are laughed at and scorned in public because of a difference in religion, or ethnicity, or because someone believes you have a medical condition. It's a pogrom of anyone experiencing such words or actions targeting another. Targeting Mr. Doe as he is singled out for his protected characteristic, and retaliated against for asserting his opposition.

These continually performed behaviors targeted Mr. Doe. They show a pattern of constructive harassment designed to unwelcome Mr. Doe from the World Cup Cafe, and continually targeted Mr. Doe on the same behaviors.

Relief Sought:
Mr. Doe seeks:

- Declaratory relief to affirm violations of federal and state laws.
- Injunctive relief requiring corrective actions by Mission Waco
- Compensatory and punitive damages for emotional distress, reputational harm, and economic losses.
- Attorneys' fees and costs associated with pursuing this complaint.
- Mr. Doe also asks the court to provide assistance in further investigating this matter including recommendations to other departments by way of letter to further investigate this matter.

*[signature]*