UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **LANT CHAPMAN,** § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL NO. 6:24-CV-00600-ADA-DTG |
| § | |
| **MISSION WACO, A TEXAS NON-PROFIT ORGANIZATION, MISSION WACO WORLD CUP CAFÉ, A BUSINESS AND INDIVIDUALS OR ENTITIES ASSOCIATED WITH THE ADVERSE ACTIONS INFLUENCED BY COMMENTS AND ACTIONS DIRECTED TOWARD PLAINITFF AFFECTING THE LEVEL OF SERVICE INSIDE OF THE CAFÉ,** § | |
| § | |
| **Defendants.** § | |

**ORDER GRANTING DEFENDANT'S MOTION FOR
<u>SUMMARY JUDGMENT</u>**

Before the Court is Defendant Mission Waco, Mission World Inc. ("Mission Waco" or "Defendant") Motion for Summary Judgment ("the Motion"). Dkt. 54. Plaintiff Lant Chapman ("Chapman" or "Plaintiff") filed a Response. Dkt. 55. Defendant then filed a Reply. Dkt. 61. Having considered Defendant's Motion (Dkt. 54), Plaintiff's Response (Dkt. 55), Defendant's Reply (Dkt. 61), and the applicable law and facts, Defendant's Motion for Summary Judgment is hereby **GRANTED.**

**I.   FACTUAL BACKGROUND**

Lant Chapman (also "Plaintiff" or "Chapman")[1] is a former patron of Mission Waco's World Cup Café ("WCC"). He is also of Jewish descent and is a practicing Buddhist. WCC is a restaurant operated by Mission Waco, a 501(c)(3) non-profit religious organization based in

---

[1] Plaintiff previously filed as John Doe, so "Doe" or "Mr. Doe" may show up in other court documents. This Court denied Chapman's Motion to Proceed Anonymously (Dkt. 9), so this order will refer to him by name. (Dkt. 11)

Waco, Texas. Dkt. 54 at 1. Chapman alleges that employees at WCC discriminated against him, in violation of 42 U.S.C. §12102, the ADA Amendments Act of 2008, Title II of the Civil Rights Act, and §503 of the Rehabilitation Act of 1973. Dkt. 54-12 at 33:13–19.

Mission Waco maintains that it and its staff did not discriminate against Chapman on the basis of disability, religion, or national origin, and "continued to provide service to Mr. Chapman like any other customer of WCC" even as tensions heightened and Mr. Chapman caused additional issues. Dkt. 54-2, Decl. Wise, ¶7. Further, WCC's Director, General Manager, and Chef, Michael Charette declared he was unaware of Chapman's religion or his national origin. Dkt. 54-10, Decl. Charette, ¶4.

Chapman's issues with the staff at WCC are best framed through his interactions with Katy Wise, the Associate Executive Director of Operations and Equipping at Mission Waco. Dkt. 54 at 2. In July 2024, Wise and Chapman met to discuss Chapman's feeling that WCC employees began disparaging, monitoring, doubting, hyper-scrutinizing, and decreasing affection towards Chapman. In Ms. Wise's account of this meeting, he did not provide any specific behaviors. Dkt. 20, at 2[2]; Dkt. 54-2, Decl. Wise, ¶7. After the July meeting, Chapman continued emailing Wise about treatment at WCC, which prompted her to email Charette and others, instructing them to treat Chapman like other customers and refrain from discussing him. Dkt. 20 at 2-3; Dkt. 54-2, Decl. Wise, ¶8.

In early September, Charette emailed Wise to report incidents of aggression and unsettling behavior by Chapman. Dkt. 54-2, Decl. Wise, ¶9–11. When Wise and Carlos Hinojosa, another Mission Waco Executive Director, met with Chapman on September 16, 2024 they discussed his aggressive behavior, including an incident during which Chapman cursed at Charette and interrupted an interaction with another customer to force Charette to shake his

---

[2] The Amended complaint does not have native page numbers, so all references are court assigned.

2

hand. These aggressive incidents are absent in Plaintiff's Deposition and filings; however, Mission Waco provided declarations and emails between Charette and Wise to support these interactions. *See* Dkt. 54-2, Decl. Wise, ¶¶9–12; Dkt. 54-4; Dkt. 54-9; Dkt. 54-10; Dkt. 54-12.

In September 2024, Chapman submitted a formal civil rights complaint to Mission Waco. Dkt. 54-2, Decl. Wise, ¶15. In October, Chapman filed the instant lawsuit in state court. *John Doe v. Mission Waco et al.*, No. 2024-2954-6 (474th Dist. Ct., McLennan County, Tex. Oct. 16, 2024). Following this filing, Mr. Charette reported three occasions of increasingly threatening behavior from Mr. Chapman. Dkt. 54-10, Decl. Charette, ¶15. First, on November 2, 2024, Chapman came into WCC, wearing a body camera and recorded the staff. *Id.* Second, Mr. Charette reported seeing Chapman walking slowly back and forth on the sidewalk outside WCC and peering in. *Id.* Third, Chapman approached Charette while he was standing in the meat department at Jubilee Food Market ("Jubilee"), mentioned the lawsuit, and according to Charette, also told him, "watch yourself." 54-9 ¶4; Dkt. 55 at 5. Charette reported this interaction to the meat department manager, David Daniels, Wise, and the Waco Police Department. Dkt. 54-10, Decl. Charette, ¶16–17.

Chapman returned to WCC on November 16, 2024, and pursuant to the instructions from the Waco Police Department Charette received after the Jubilee incident, Charette called the Waco Police Department to have Chapman removed. Dkt. 54 at 8. Plaintiff characterized the removal as retaliation for filing a civil rights lawsuit. Dkt. 20 at 8. Defendants claim that Charette called the police because Chapman's erratic and unpredictable behavior caused them to fear for their safety. Dkt. 54 at 9.

3

## II.    LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014). A material fact will have a reasonable likelihood to affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is not genuine if the trier of fact could not, after an examination of the record, rationally find for the non-moving party. *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). As such, the burden of demonstrating a lack of a genuine dispute of material fact lies with the movant. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

A court must view the movant's evidence and all factual inferences from such evidence in a light most favorable to the party opposing summary judgment. *Impossible Elecs. Techniques v. Wackenhut Protective Sys., Inc.*, 669 F.2d 1026, 1031 (5th Cir. 1982). Accordingly, the fact that the court believes that the non-moving party will be unsuccessful at trial is an insufficient reason to grant summary judgment in favor of the moving party. *See Jones v. Geophysical Co.*, 669 F.2d 280, 283 (5th Cir. 1982). Yet, "[w]hen opposing parties tell two different stories, but one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380–81 (2007).

Once the court determines that the movant has presented sufficient evidence that no genuine dispute of material fact exists, the burden of production shifts to the party opposing summary judgment. *Matsushita*, 475 U.S. at 586. The non-moving party must demonstrate a genuinely disputed fact by citing to parts of materials in the record, such as affidavits, declarations, stipulations, admissions, interrogatory answers, or other materials; or by showing

that the materials cited by the movant do not establish the absence of a genuine dispute. Fed. R. Civ. P. 56(c)(1)(A)–(B). "Conclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment." *Duffy v. Leading Edge Prods.*, 44 F.3d 308, 312 (5th Cir. 1995).

### III. DISCUSSION

#### A. SUMMARY JUDGMENT IS JUSTIFIED ON CHAPMAN'S DISABILITY DISCRIMINATION CLAIMS BROUGHT UNDER TITLE III OF THE ADA.

Mission Waco moves for summary judgment on the Title III public accommodation claim because it is exempt from the statute's requirements and did not employ a discriminatory policy or practice that prevented it from providing a necessary accommodation to Chapman's disability. Dkt. 54 at 11-15. The Court agrees with Mission Waco on both grounds.

##### 1. Mission Waco is excluded from Title III provisions.

"[E]ntities controlled by religious organizations" are excluded from Title III provisions that would otherwise cover an "establishment serving food or drink." 42 U.S.C. § 12181; 42 U.S.C.S. § 12187 ("The provisions of this title shall not apply to private clubs or establishments exempted from coverage…or to religious organizations or entities controlled by religious organizations.") WCC is a restaurant operated by the religious organization, Mission Waco—it is not a separate legal entity. Dkt. 54-2, Decl. Wise, ¶4. Thus, WCC is a public accommodation that fits squarely within the exemption to Title III and Mission Waco is entitled to summary judgment on Plaintiff's Title III claims. 42 U.S.C. § 12187.

##### 2. The alleged treatment of Mr. Chapman does not constitute discrimination under the ADA.

Title III prohibits discrimination on the basis of disability in "the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any

place of public accommodation." 42 U.S.C. § 12182(a). To state a claim under 42 U.S.C. § 12182(a), a plaintiff must establish:

> (1) defendant has a disability as defined under the ADA;
> (2) the defendant is a private entity that owns, leases, or operates, a place of public accommodation;
> (3) the defendant employed a discriminatory policy or practice; and
> (4) the defendant discriminated against the plaintiff based upon the plaintiff's disability by failing to make a requested reasonable modification that was necessary to accommodate the plaintiff's disability.

*Hernandez v. Roche*, EP-20-CV-00263-DCG, 2022 WL 4072963, at *3 (W.D. Tex. Sept. 2, 2022). A person is disabled under the ADA when they have or are perceived to have "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1). Discrimination under the ADA includes five specific categories of activity that have to do with screening criteria and physical barriers that prevent a disabled individual from being able to participate or receive services. *See* 42 U.S.C. 12182(b)(2)(A)(i)-(v).

Plaintiff alleges that WCC individuals engaged in the following discriminatory behavior: mocking his health matters, providing poor service, serving him with less warmth, changing the sides he is served, and overcharging him. Dkt. 55 at 2, 4; 55-5 ¶10. More generally, Plaintiff claims that Mission Waco saw him as disabled and "treated [him] wrong because of it." Dkt. 55 at 2. However, Plaintiff has not described statutorily prohibited behavior under Title III. Even if true, the alleged behavior, which is not supported by the record, does not fall under one of the categories of discrimination under the ADA. Failing to provide warmth does not provide a physical barrier against Chapman receiving service, nor does it prevent him from participating by illegally screening him out.

Additionally, Plaintiff fails to establish a perceived disability as defined by the ADA. Chapman claims that employees at WCC saw him as disabled and alleges to have a perceived disability. The only evidence he provides is allegedly condescending service, vague references to others discussing substance abuse, and an unsubstantiated comment from Kathy Wise. Without more details about what kind of disability WCC thinks Chapman has, the allegations do not rise to the level of "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1),(3). Nor do they demonstrate that WCC actually did perceive Chapman as having a disability.

### B. SUMMARY JUDGMENT IS JUSTIFIED ON CHAPMAN'S CLAIMS BROUGHT UNDER TITLE II OF THE CIVIL RIGHTS ACT.

Mr. Chapman is bringing a Title II claim for discrimination he received for practicing Buddhism and his association with Judaism. Dkt. 54-12 at 31:22–32:8. Mission Waco moves for summary judgment on this claim because Chapman has not provided enough evidence to establish a prima facie case of Title II discrimination. Dkt. 54, at 16–17. Again, the Court agrees that Chapman has failed to create a genuine dispute of material fact with respect to his Title II claims.

#### 1. Plaintiff offers insufficient evidence of direct discrimination.

To establish a claim for discrimination under Title II, a plaintiff must show that they were denied full and equal access to public accommodations due to their race, color, religion, or national origin. 42 U.S.C. § 2000(a). A plaintiff can use direct or circumstantial evidence to prove a case of Title II discrimination. *Fahim v. Marriott Hotel Servs.*, 551 F.3d 344, 349 (5th Cir. 2008). "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Sandstad v. CB Richard Ellis, Inc.,* 309 F.3d 893, 897

(5th Cir. 2002). If a plaintiff relies upon circumstantial evidence, the Title II claims are subject to the same burden-shifting analysis as a Title VII claim. *Id.*

Chapman has not provided any direct evidence of Title II discrimination. He alleges to have heard an employee say, "I hear you're some sort of Buddhist," which he understood as "a statement of stigmatization." Dkt. 54-12 at 174:2–9; 187:14–15; 175:15–16. He also claims staff asked "delegitimizing" questions about his religious charity and stated that its "weird" or "can't be real." Dkt. 54-12 at 179-180:14–20. Defendant interprets Chapman's deposition as an admission that he has no direct evidence of his alleged national origin or religious discrimination claims. Dkt. 54-12 at 177:10 – 178:25.

Assuming these statements are true, they still do not satisfy the direct evidence requirement. Each alleged statement fails to prove the fact of discriminatory animus without inference or presumption. *See Sandstad*, 309 F.3d at 897; *see also Nall v. BNSF Ry. Co.,* 917 F.3d 335, 341 (5th Cir. 2019) (holding the statement, "people with Parkinson's don't get better," did not qualify as direct evidence of disability discrimination); *see also Afkhami v. Carnival Corp.,* 305 F. Supp. 2d 1308, 1314 (S.D. Fla. 2004) (holding the statement, "they're Iranian, but they're nice people," did not constitute direct evidence of discrimination). Additionally, the comments alleged by Chapman provide no direct discrimination due to his Jewish heritage, which is the second basis of his Title II claim.

### 2. Plaintiff cannot establish a prima facie case of Title II discrimination.

If a plaintiff relies upon circumstantial evidence, the Title II claims are subject to the same burden-shifting analysis as a Title VII claim under *McDonnell Douglas Corp. Fahim,* 551 F.3d at 349; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To establish a prima facie case under Title II, a plaintiff must show that he: (1) is a member of a protected group; (2)

attempted to contract for the services of a public accommodation; (3) was denied those services; and (4) the services were made available to similarly situated persons outside his protected class. *Fahim,* 551 F.3d at 350. If a plaintiff is successful in proving his prima facie case for Title II claims, then the burden shifts to the defendant to articulate a non-discriminatory reason for the alleged actions. *See McLaurin v. Waffle House, Inc.,* 178 F. Supp.3d, 536, 545 (S.D. Tex. 2016).

To establish his prima facie case of discrimination Plaintiff points to a series of alleged staff behavior; however, none of those allegations involve Plaintiff being denied services, or that services were made available to similarly situated persons outside his protected class. Chapman points to alleged decreases in service quality, but none of these allegations qualify as a denial of "full and equal access to a public accommodation." 42 U.S.C. § 2000(a). As Wise and Charette reiterate in their declarations, between each meeting Chapman had with Ms. Wise and before and after each incident, the staff at WCC continued to serve him. *See generally* Dkt. 54-2, Decl. Wise; *see also* Dkt. 54-10, Decl. Charette.

### C. MISSION WACO IS ENTITLED TO SUMMARY JUDGMENT ON CHAPMAN'S RETALIATION CLAIMS.

Mission Waco argues it is entitled to summary judgment on Chapman's Title II and III retaliation claims because Chapman did not engage in protected activities and failed to establish a prima facie case for retaliation. Dkt. 54 at 18–23. In response, Chapman argues that his being escorted out of WCC and a decrease in service-type behaviors are sufficient to show retaliation. Dkt. 55 at 7. The Court agrees with Defendant that Chapman's retaliation claims fail as a matter of law.

#### 1. Chapman could not exercise his rights against a religious organization.

Mission Waco argues it is entitled to summary judgment on Chapman's ADA retaliation claim because the only alleged protected activity that he claims to have engaged in was opposing

9

an act or practice made unlawful by Title III of the ADA. Dkt. 54-12 at 246:6-17. As mentioned, Mission Waco is a religious organization, exempt from Title III. *Supra* § III.A.2. Thus, Chapman could not have engaged in protected activity under Title III because Title III does not provide Chapman with any rights against Mission Waco. *See* 42 U.S.C. § 12203(a). For these reasons, Mission Waco is entitled to summary judgment on Chapman's ADA retaliation claim.

### 2. Chapman could not retaliate because he did not exercise his rights under Title II and III retaliation claims.

Title V of the ADA prohibits retaliation against any individual who has exercised his rights under Title III of the ADA. *See* 42 U.S.C. § 12203(a). As a guide in evaluating Chapman's retaliation claims, this court looks to the application of retaliation in the employment context brought in conjunction with claims under Title I of the ADA, Title VII of the CRA, and § 1981 and § 1983. *See Joyce v. Texas*, Civ. No. 1:20-cv-00145, 2023 WL 6020728, at *17 (N.D. Tex. Jan. 25, 2023) (reciting prima face case for retaliation under Title V brought in conjunction with a Title III claim by citing to authority stating elements in the context of an employment dispute) (opinion withdrawn on other grounds).

Retaliation under the ADA requires that an employee show: (1) he engaged in activity protected by the ADA; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action. *Strife v. Aldine Indep. Sch. Dist.*, 138 F.4th 237, 249 (5th Cir. 2025). Here, protected activity includes "oppos[ing] any act or practice made unlawful by [the ADA]." *St. John v. Sirius Sols., LLLP*, 299 F. App'x 308, 309 (5th Cir. 2008) (per curiam) (citing 42 U.S.C. § 12203(a)). Plaintiff would need to show that he reasonably believed Defendant engaged in activity that was "unlawful *under the ADA* in order to have engaged in a 'protected' activity." *DeBlanc v. St. Tammany Par. Sch. Bd.*, 640 F. App'x

10

308, 313 (5th Cir. 2016) (per curiam) (emphasis in original). Without such a showing, Plaintiff cannot establish he engaged in protected activity capable of supporting a retaliation claim.

Chapman argues that he engaged in a protected activity when sending Charette a cease-and-desist letter and complaining to Wise. Dkt. 54-12 at 246:6-17. When asked for facts that support his belief that he was retaliated against for making complaints, the only specific allegations of retaliation that Chapman alleges against Mission Waco are that he was charged for cream, that his food was being monitored, that he was removed from WCC, and that he thinks that a WCC employee was recording him from the window of WCC. *Id.* at 213:6-12, 243:25 – 245:22, 278:23 – 279:11, 287:4-16.

Additionally, the plaintiff must show that they were denied services in retaliation for that protected activity. *See Lizardo v. Denny's, Inc.*, 270 F.3d 94, 106 (2d Cir. 2001). The facts on the record do not support Chapman's allegations that he was denied services due to his complaints or any other protected activity. On the contrary, Mission Waco continued to provide service to Chapman in WCC for over four months from his first complaint in July 2024 until he was removed from WCC for his threatening behaviors towards Charette on November 16, 2024. Dkt. 54-2, Decl. Wise, ¶15; Dkt. 54-10, Decl. Charette, ¶14. The record clarifies that Chapman's behavior progressively escalated. Dkt. 54-12 at 159:11-160:23, 161:12-162:6, 215:6-216:6, 217:15 – 218:10, 220:6-11.

Chapman fails to show that he was denied services due to his complaints. Rather, the record demonstrates that his removal was in response to his threatening behavior. Chapman's retaliation claim therefore fails as a matter of law because WCC did not deny him services because of any protected activity—it denied him services because of Chapman's own threatening behavior toward those at WCC.

### D. MISSION WACO IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S RESIDUAL RELIEF CLAIMS

Chapman's claims for monetary relief are legally improper. Monetary relief is not recoverable under any of the claims Chapman asserts. Title III permits claims for injunctive relief only. 42 U.S.C. § 12188(a)(2); 28 C.F.R. 36.501 (a); *see also Prosper v. Premier Sec. Agency*, Civ. No. H-21-1910, 2021 WL 4442769 at *2 (S.D. Tex. Sept. 28, 2021). Retaliation under Title V when based on asserting rights under Title III also only permits injunctive relief. 42 U.S.C. § 12203(c); *see also G. v. Fay Sch.*, 931 F.3d 1, 9 (1st Cir. 2019) (holding that "only injunctive relief is available for a Title V claim premised upon opposition to violations of Title III"). Similarly, Title II authorizes only prospective injunctive and declaratory relief. 42 U.S.C. § 2000a-3; *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 (1968); *see also Bass v. Parkwood Hosp.*, 180 F.3d 234, 244-245 (5th Cir. 1999) ("Unlike many other civil rights statutes, however 42 U.S.C. § 2000a allows only for prospective relief and does not authorize damage awards."). Because monetary relief is not available under the causes of action Chapman asserts, summary judgment is granted as to Chapman's residual relief claims.

### IV. CONCLUSION

After a thorough evaluation of the parties' arguments, relevant facts, and the applicable laws, the Court finds that there is no dispute of material fact as to each of Plaintiff's claims. Accordingly, the Court hereby **GRANTS** Defendant's Motion for Summary Judgment (Dkt. 54).

**SIGNED** this 2nd day of February, 2026.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE